H. N. CLARK v. H. G. BLAND, ATLANTIC COAST LINE RAILROAD COMPANY, AND DIRECTOR GENERAL OF RAILROADS.

(Filed 23 March, 1921.)

**1. Corporations—Principal and Agent—Torts.**

Corporations may be held liable for the malicious and willful as well as negligent torts of their agents and employees, when committed in the course and scope of their employment, and also for injuries inflicted in breach of some duty owing directly from the company to the injured

CLARK *v.* BLAND.

person, growing out of the conditions existing between them, an instance of this last rule of liability not infrequently presented from the relationship of carrier and passenger.

**2. Same—Evidence—Nonsuit—Trials.**

Upon a motion to nonsuit, the evidence which makes in favor of plaintiff's claim must be accepted as true, and construed in the light most favorable to him, and defendant's evidence *per contra* will not be considered.

**3. Carriers of Passengers—Railroads—Passengers—Evidence—Questions for Jury—Trials.**

Evidence that the plaintiff went to the defendant railroad company's passenger depot for the purpose of becoming a passenger on the defendant's next train, about an hour before schedule time, then open for the reception of passengers, and waited for the opening of the ticket office, which was customarily done a quarter of an hour before train time, is sufficient for the jury to find that during this time the relation of carrier and passenger existed between the parties.

**4. Same—Reasonable Time.**

Where a person goes to the passenger depot of a railroad company, open for his reception for the purpose of taking a train, before the customary time for the ticket office to open, the custom as to the time of defendant to open its ticket office is not controlling on the question whether the person has entered the station "within a reasonable time before the departure of his train," but it may be considered with the other evidence tending to show he had done so.

**5. Carriers of Passengers—Railroads—Duty to Passengers—Protection.**

A railroad company is held to a high degree of care in protecting its passengers from violence and insult, and may be held liable for injuries inflicted in breach of this duty on the part of their employees, and of others also which it could have prevented in the reasonable and proper performance of this duty.

**6. Same—Principal and Agent—Punitive Damages.**

Where in breach of the duty of a railroad company to protect its passengers, injuries are inflicted on the passenger by the company's employees willfully and of malice, or under circumstances of insult, rudeness, and oppression, punitive damages may be awarded in the discretion of the jury.

**7. Same—Liability of Carrier—Agency—Evidence—Trials.**

Where railroad agents are to be changed at a station, and the one leaving has remained to help or instruct the other in his duties there, he may properly be considered the agent of the railroad company for that time, whose failure to discharge the carrier's duty to protect its passengers will subject the carrier to the payment of actual damages, and under proper circumstances, with punitive damages, to be awarded in the discretion of the jury.

**8. Carriers of Passengers—Railroads—Relation of Passenger—Depot Premises—Assault—Principal and Agent.**

In order to come within the duty of a railroad company to protect one in the relation of a passenger, it is not always required that the person

should remain continuously in the carrier's coach or on the carrier's immediate premises, and evidence that the local agent of the railroad called a passenger off its premises ostensibly for another purpose, but in fact for the purpose of an assault, without the passenger's knowledge of this purpose, and then assaulted and injured him, just beyond the depot premises, is sufficient to take the case to the jury upon the question of the relationship of the injured person to the carrier as a passenger.

APPEAL from *Devin, J.,* and a jury, at June Term, 1920, of HALIFAX. The action is to recover damages for an unlawful and wrongful assault and battery on plaintiff by defendant, H. G. Bland, and in which plaintiff seeks to hold defendant company liable by reason of the fact that plaintiff was a passenger of defendant road, and that Bland was an employee of the company at the time, and that the assault was made and injuries inflicted under circumstances that rendered the company, etc., responsible for his wrongful conduct. There was denial of liability on the part of the company and Director General, who insisted that Bland, while an employee, was not on duty at the time and place of the occurrence, and that these defendants were in no way liable for his acts. On issues submitted, the jury rendered the following verdict:

"1. Did the defendant Bland unlawfully assault the plaintiff, as alleged? Answer: 'Yes.'

"2. Did the defendants, Atlantic Coast Line Railroad and Walker D. Hines, Director General of Railroads, through their agent, unlawfully assault the plaintiff, as alleged? Answer: 'Yes.'

"3. What damages, if any, is the plaintiff entitled to recover therefor? Answer: '$2,250.'"

Judgment on verdict for plaintiff, and defendants other than Bland excepted and appealed.

*J. Crawford Biggs, D. M. Clark, and Daniel & Daniel for plaintiff.*

*F. S. Spruill, R. C. Dunn, and F. E. Winslow for defendants other than H. G. Bland.*

HOKE, J. It is now fully recognized that corporations may be held liable for the malicious and willful as well as negligent torts of their agents and employees, when committed in the course of and scope of their employment, and also for injuries inflicted in breach of some duty owing directly from the company to the injured person, growing out of the conditions existent between them, an instance of this last rule of liability being not infrequently presented from the relationship of carrier and passenger. *Cotton v. Fisheries Product Co.,* 177 N. C., 56-59, citing *Cooper v. R. R.,* 170 N. C., 490; *Seward v. R. R.,* 159 N. C., 241; *Sawyer v. R. R.,* 142 N. C., 1; *Jackson v. Tel. Co.,* 139 N. C., 347; *Hussey v. R. R.,* 98 N. C., 34; *Bank v. Graham,* 100 U. S., 699; *R. R. v.*

---

---

*Quigley,* 62 U. S., 202; *Palmeri v. R. R.,* 133 N. Y., 261; *Maynard v. Fireman's Fund Ins. Co.,* 34 Cal., 48.

It is on this ground that liability has been fixed on appellants in the case before us, and we find no good reason for disturbing the results of the trial. It is objected to the validity of plaintiff's recovery that the court refused defendant's motion of nonsuit, and this principally on the ground that there is no evidence of legal significance that the relationship of carrier and passenger existed between the parties at the time. Second, that there was error in allowing the jury to consider the question of punitive damages, but in our opinion neither position can be maintained. On the motion to nonsuit there was evidence on the part of plaintiff tending to show that on 27 March, 1919, plaintiff went to the railroad station of defendant company at Norfleet, N. C., for the purpose of becoming a passenger on the next train of the company going towards Kelford, the next station on the road; that plaintiff went to the station, which was then open for reception of passengers, about an hour before schedule time, which was 10 :20 a. m.; that defendant Bland and one O. W. Parker were in the regular railroad office at the time, apparently engaged in some official work; that plaintiff inquired for an express package he was expecting, and after and while waiting for the ticket window to open, which was usually done about fifteen minutes before the arrival of trains, plaintiff stepped into station yard about five feet from office, and while there Bland and Parker came out and passed plaintiff going towards the store of Moses Moore, which abutted on the station premises. As they passed Parker asked plaintiff to come on and have a drink. That soon Bland, while standing about forty steps away in the direction of the store and in the station yard, called to plaintiff to "come over here, I would like to speak to you." Plaintiff went to him, when Bland asked plaintiff why he had told that Bland was selling whiskey. Plaintiff replied that he didn't recall having said anything about that. Bland said to plaintiff: "Didn't you tell Captain Haley that I had been peddling whiskey on the streets of Kelford?" Plaintiff replied "No"; when Bland called him a "God-damned liar," and picked up a heavy stick three feet long and hit plaintiff several times with it over head and shoulders, etc. That plaintiff tried to make defense, but was too much stunned and crippled by the blows with the stick; that plaintiff went up on platform of the store to get something to protect himself, and Bland followed. They clinched and fell off the porch. That during the occurrence Bland, who was at the time station agent of the company at Norfleet, continued to curse and abuse plaintiff, and in the assault inflicted protracted and painful injuries upon him.

Considering this statement under the rule which uniformly prevails in this jurisdiction, that on motion to nonsuit the evidence which makes

8—181

in favor of plaintiff's claim must be accepted as true, and construed in the light most favorable to him, *Lamb v. R. R.,* 179 N. C., 619, and authorities cited, the facts clearly permit the inference that plaintiff was a passenger of defendant company on this occasion, and that under the circumstances presented the company is liable for the misconduct of Bland, their agent and codefendant.

There was evidence on the part of defendant tending to show that plaintiff had come to the station and made inquiry of its agent at or near eight in the morning, more than two hours before the schedule time for the train; that plaintiff had said nothing of his purpose of becoming passenger, and that he knew of the custom not to open the ticket window till fifteen minutes before schedule time for train. Defendant's evidence further tended to show that Bland was not the agent at Norfleet at this time, but had surrendered the keep and control of the station the afternoon before to O. W. Parker, the new man at Norfleet, and with view of becoming agent at Kelford, the next station on the line, and that if Bland was at or about the station on that occasion at all that day he was there only for the purpose of assisting Parker, the new agent, to take up the work, and that he was otherwise without authority or duty at Norfleet; and further, that the fight was not on the company's premises proper, but commenced on the platform of the store. On the motion to nonsuit, this testimony coming from defendant could not properly be considered, and as to plaintiff's being a passenger, the question on the conflicting testimony was submitted to the jury, with the instruction, among other things, that, "If plaintiff Clark went to said railroad at Norfleet upon this occasion to take the next train for Kelford, and went to the station at Norfleet in a reasonable time before the time for the arrival of the train, though he had not purchased a ticket, he is in contemplation of law a passenger, and the duties imposed by the relation of carrier and passenger would be obligatory on the railroad," etc, a position that is fully supported by the decided cases with us, and by the authorities generally on the subject. *Thomas v. R. R.,* 173 N. C., 494; *Seawell v. R. R.,* 132 N. C., 856-859; *Tillett v. R. R.,* 115 N. C., 665; *Hansley v. R. R.,* 115 N. C., 603; *Kidwell v. Chesapeake & Ohio R. R.,* 71 W. Va., 664; 4th Elliott on Railroads (2 ed.), sec. 1579; 4th R. C. L., pp. 1029-30, title Carriers, sec. 489. In a note to the *Kidwell case,* reported also in 43 L. R. A., sec. IV, at p. 999, it is said to be the general rule sustained by the great weight of authority that a person who goes to a railroad station with the intention of taking the next train is in contemplation of law a passenger, provided his coming is in a reasonable time before the departure of the train, citing numerous cases. And in 4th Elliott the author says: "A person may become a passenger before he has entered the train or vehicle of the carrier. We think it safe to

say that a person becomes a passenger when, intending to take passage, he enters a place provided for the reception of passengers, as a depot, waiting room, or the like, at a time when such place is open for the reception of persons intending to take passage on the train of the company." The evidence as to a custom not to open the ticket window until fifteen minutes before schedule time for trains, while evidential, is not at all controlling on the question whether the person enters the station "open for his reception, and within a reasonable time before the departure of his train." The jury, under a correct charge, having accepted the view that the relationship of carrier and passenger existed between plaintiff and defendant company, the authorities are very generally to the effect that the corporation is held to a high degree of care in protecting plaintiff from violence and insult, and may be held liable for injuries inflicted in breach of this duty on the part of their employees, and of others, also, which it could have prevented in the reasonable and proper performance of their duty. *Lanier v. Pullman Co.*, 180 N. C., 406; *Williams v. Gill*, 122 N. C., 967; *Daniel v. R. R.*, 117 N. C., 592; *White v. R. R.*, 115 N. C., 631; *Britton v. R. R.*, 88 N. C., 536; *Birmingham, etc., v. R. R. Co.*, 130 Ala., 334.

And these and many other cases in this jurisdiction hold that when such injuries are inflicted willfully and of malice or under circumstances of insult, rudeness, and oppression, punitive damages may be awarded in the discretion of the jury. *Lanier v. Pullman Co., supra; Huffman v. R. R.*, 163 N. C., 171; *Williams v. R. R.*, 144 N. C., 498; *Hutchinson v. R. R.*, 140 N. C., 123; *Strother v. R. R.*, 123 N. C., 197.

Appellants except further that as to the exact point where the difficulty took place, the court instructed the jury in effect that, "If plaintiff, being on the railroad premises and on business with the company, as claimed, was called off by an employee of the railroad to a point a short distance away, and for the purpose of a personal difficulty, and was there assaulted and beaten, the same rules would apply whether the point at which the assault took place was just on or off the premises of the company"; but we think this is undoubtedly a correct ruling. The evidence is clearly to the effect that either Bland was the company's agent at the station, or, being an employee of the company, he was there assisting the new agent in his duties, this last position seems to be recognized in the brief of counsel, and in such case he would be charged in part with extending to plaintiff the protection owing to him as a passenger, and under such circumstances, if he called plaintiff from the premises for the purpose of assaulting him, and did assault him as claimed, just beyond the line, the breach of duty might well be considered as commencing at the time of the call. Assuredly so if the plaintiff had no notice or warning of the agent's wrongful purpose, and

in any event on the facts presented, plaintiff would still be within the sphere of protection owing to him as the company's passenger at the time, for the principle by no means requires that the passenger should remain continuously in the company's vehicles nor on the immediate premises.   *Wallace v. R. R.,* 174 N. C., 174; *Palmer v. R. R.,* 131 N. C., 250.   In this last case, the present *Chief Justice* states the principle applicable as follows:   "If plaintiff had been a passenger, or his passage had not fully terminated, or if when he left his car at his destination the employee had immediately followed the passenger up and assaulted him, defendant concedes that there would be no question as to the liability of the company," citing *Daniel v. R. R.,* 117 N. C., 592; *Williams v. Gill,* 122 N. C., 967; *Strother v. R. R.,* 123 N. C., 197.

We were referred by counsel to the case of *Stewart v. Lumber Co.,* 146 N. C., 47, as an authority against the award of punitive damages in the present instance, but we do not so consider it.   That was a case where a traveler along the highway sought to impose liability on the company by reason of the willful wrong of its engineer in blowing the engine whistle for the purpose of frightening plaintiff's mule, causing it to run away and injure plaintiff.   It will be noted that plaintiff there was an outsider or third person, and the breach of an independent duty owing directly from the company to claimant was in no way presented or involved. The claim depended entirely on principles of agency or the relationship of master and servant alone.   The distinction adverted to is pointed out in *Sawyer's case,* 142 N. C., p. 1, as follows:   "According to the varying facts of different cases, the question of fixing responsibility on corporations by reason of the tortious acts of their servants and agents is sometimes made to depend exclusively on their relationship as agents or employees of the company, and sometimes the facts present an additional element and involve some independent duty which the corporations may owe directly to the injured or complaining party."

In our case this additional element is present, the suit being for a breach of duty growing out of the relationship of carrier and passenger, and by an agent of the company charged in part with performance of the duty of protection and care of plaintiff, and in such case the authorities in this jurisdiction uphold the award of punitive damages where, as stated, the wrong is done willfully and under circumstances of insult, rudeness, or oppression.   Thus in *Huffman v. R. R., supra,* it was held "that defendant railroad company was liable in punitive damages for willful and malicious abuse of a female passenger, traveling on his train, occasioned by her not having purchased a ticket for a nine-year-old child traveling with her."

In *Williams v. R. R.,* 144 N. C., 498, "That defendant company is liable for punitive in addition to compensatory damages for willful

refusal to stop a train at a flag station," etc. And in *Hutchinson v. R. R.,* "That in a question of punitive damages, the court correctly instructed the jury that if the conductor maliciously or with wanton recklessness carried plaintiff past her station, or if he maliciously or wantonly mistreated or humiliated her, they could assess punitive damages." And so here it was proper to submit the question of punitive damages to the jury on evidence tending to show an unlawful and malicious assault on plaintiff, who was on the premises of defendant as a passenger, and by an agent or assistant agent of the company, who was charged in part with the duty of the protection due plaintiff from the company as its passenger.

We were also cited to *Lake Shore, etc., R. R. v. Prentice,* 147 U. S., 101, where it was held that a corporation is not liable to exemplary or punitive damages for a willful or malicious tort on the part of its employee or agent unless such tort directly was authorized or ratified by the company. It is recognized, however, in that opinion that in many of the states the liability of corporations for punitive damages is not so restricted, and on the facts of this record the rule is clearly otherwise in this jurisdiction.

On careful consideration we find no error in the record, and are of opinion that the judgment for plaintiff, establishing liability of defendant company, should be affirmed.

No error.

CLARK, C. J., did not sit.