This was an action to recover damages for an assault upon the plaintiff while a passenger in defendant's bus station. The assault was committed by one of the defendant's employees by burning defendant's feet with gasoline.
The plaintiff, a Negro, was in defendant's bus station, at night, waiting for a bus upon which he intended to become a passenger. While he was asleep the defendant's porter and attendant on duty in the colored waiting room poured gasoline on plaintiff's feet and set them on fire, causing substantial injury. The material facts were admitted in the answer. The defendant's principal defense was a release executed upon the payment of $55. The release was attacked for fraud. Ratification was alleged in defendant's rejoinder.
Issues addressed to the execution of the release, fraud in its procurement, and ratification, as well as issues relating to the commission of the act causing the injury, and damages, both compensatory and *Page 644 
punitive, were submitted to the jury and answered in favor of the plaintiff. Compensatory damages in the sum of $500 and punitive damages in the sum of $1,000 were awarded.
From judgment on the verdict, defendant appealed.
The defendant assigns as error the following excerpt from the trial judge's charge to the jury: "Nominal damages, gentlemen, are construed to be, say $1.00, $10.00, $15.00, $50.00 — some nominal damages, and if you reach this issue and you find he is not damaged more than what is a nominal sum of money, you are to answer this, then, in a nominal sum of money unless you find that the sum of $55.00 paid to him and his lawyer and his doctor is a full, just and complete settlement already. . . . The defendant says, therefore, on this issue you ought not to allow any amount of nominal damages, because the defendant says it has already paid the plaintiff $55.00, which is nominal damages as the court instructed you, regarded usually as $1.00, $10.00, $15.00, $25.00 or $50.00, may be $100.00, as nominal damages."
The vice of this instruction consists not so much in its effect upon the issue of damages, as to which it might be deemed harmless in view of the verdict of the jury, but we think it was prejudicial on the issues relating to the release set up in the answer upon which the case largely hinged. The court had instructed the jury that they might consider on the issue of fraud the inadequacy of the sum of money paid for the release. The amount paid in settlement was admitted to have been $55.00. This amount the defendant contended was an adequate compensation for the injury plaintiff sustained. Hence, the statement by the presiding judge that $55 or $100 should be considered as mere nominal damages was tantamount to an expression of opinion that the amount paid was inadequate.
The court's statement of the rule as to nominal damages was inexact. Nominal damages, consisting of some trifling amount, are those recoverable where some legal right has been invaded but no actual loss or substantial injury has been sustained. Nominal damages are awarded in recognition of the right and of the technical injury resulting from its violation. They have been described as "a peg on which to hang the costs." Hutton v. Cook,173 N.C. 496, 92 S.E. 355; 15 Am. Jur., 390. "What is meant by nominal damages is a small trivial sum awarded in recognition of a technical injury which has caused no substantial damage." Wolfe v. Montgomery Ward Co.,211 N.C. 295, 189 S.E. 722. In view of the evidence, the necessity for an instruction as to nominal damages does not appear. *Page 645 
Defendant contends its motion for judgment of nonsuit should have been allowed on the ground that plaintiff's evidence showed ratification of the settlement by the acceptance and spending of $15 cash which came to him out of the $55 paid for the release. It was admitted that of the consideration for the release, $25 was paid the doctor and $15 was paid to the attorney engaged to represent plaintiff at that time.
We cannot concur in this view. Taking the plaintiff's testimony in the light most favorable for him, and considering the evidence tending to show plaintiff's ignorance, the condition of his attorney at that time, the oppressive manner and language of those who procured the release and paid him the $15, we are unable to say that plaintiff "has proved himself out of court." Hayes v. Tel. Co., 211 N.C. 1992, 189 S.E. 499. We think the question of ratification under all the circumstances was one for the jury.Butler v. Fertilizer Works, 193 N.C. 632, 137 S.E. 813; Hayes v. R. R.143 N.C. 125, 55 S.E. 437.
The defendant excepted to the submission of the issue as to punitive damages, on the ground that the corporation should not be held liable for punitive damages for the assault upon the plaintiff, committed by its servant, since the act was outside the scope of the servant's employment and not in furtherance of defendant's business.
The general rule in this jurisdiction is that, in addition to compensatory damages, designed to compensate for the injury or loss sustained, punitive damages or smart money may be awarded by the jury, if they deem proper to do so, when they find that the tortious conduct complained of involves elements of malice, fraud, insult, or wanton and reckless disregard of the plaintiff's rights. Roth v. News Co., 217 N.C. 13,6 S.E.2d 882; Tripp v. Tobacco Co., 193 N.C. 614,137 S.E. 871; Ford v. McAnally, 182 N.C. 419, 109 S.E. 91; 15 Am.Jur., 710; 25 C. J. S., 715. It is equally well settled that liability for punitive damages may be imposed upon a corporation or other principal when the injury is inflicted in a manner which would justify such an award, and the servant or agent causing the injury is acting within the scope of his employment and in the furtherance of the master's business. Picklesimer v. R. R., 194 N.C. 40,138 S.E. 340; Robinson v. McAlhaney, 214 N.C. 180, 198 S.E. 647. There the liability for punitive as well as compensatory damages is referable to the principle of respondeat superior.
There are cases, however, where the award of punitive damages has been upheld for injuries resulting from breach of duty directly owing from the corporation to the injured person, growing out of the relationship between them, and this principle has been applied to cases of assaults by employees of common carriers committed upon passengers. This principle was stated and applied by Hoke, J., in the case of Clark *Page 646 v. Bland, 181 N.C. 110, 106 S.E. 491. In that case the plaintiff Clark went to a railroad station intending to become a passenger, and, while waiting for the train, was called to one side by the assistant station agent and assaulted for reporting him for selling whisky. The assault occurred either on or near the railroad premises. An instruction by the trial court that punitive damages might be awarded by the jury, in their discretion, was upheld. The Court said: "It is now fully recognized that corporations may be held liable for the malicious and willful as well as negligent torts of their agents and employees, when committed in the course of and scope of their employment, and also for injuries inflicted in breach of some duty owing directly from the company to the injured person, growing out of the conditions existent between them, an instance of this last rule of liability being not infrequently presented from the relationship of carrier and passenger."
The Court in that case further said: "The jury, under a correct charge, having accepted the view that the relationship of carrier and passenger existed between plaintiff and defendant company, the authorities are very generally to the effect that the corporation is held to a high degree of care in protecting plaintiff from violence and insult, and may be held liable for injuries inflicted in breach of this duty on the part of their employees, and of others, also, which it could have prevented in the reasonable and proper performance of their duty (citing authorities). And these and many other cases in this jurisdiction hold that when such injuries are inflicted willfully and of malice or under circumstances of insult, rudeness, and oppression, punitive damages may be awarded in the discretion of the jury" (citing authorities).
The Court distinguished the Clark case, supra, from Stewart v. LumberCo., 146 N.C. 47, 59 S.E. 545, and from Lake Shore R. R. v. Prentice,147 U.S. 101, and quoted from Sawyer v. R. R., 142 N.C. 1,54 S.E. 793, as follows: "The distinction adverted to is pointed out in Sawyer's case, 142 N.C. 1, as follows: `According to the varying facts of different cases, the question of fixing responsibility on corporations by reason of the tortious acts of their servants and agents is sometimes made to depend exclusively on their relationship as agents or employees of the company, and sometimes the facts present an additional element and involve some independent duty which the corporations may owe directly to the injured or complaining party.'"
"In our case," continues the opinion of Justice Hoke in the Clark case,supra, "this additional element is present, the suit being for a breach of duty growing out of the relationship of carrier and passenger, and by an agent of the company charged in part with performance of the duty of protection and care of plaintiff, and in such case the authorities in this jurisdiction uphold the award of punitive damages where, as stated, the *Page 647 
wrong is done willfully and under circumstances of insult, rudeness, or oppression. . . . And so here it was proper to submit the question of punitive damages to the jury on evidence tending to show an unlawful and malicious assault on plaintiff, who was on the premises of defendant as a passenger, and by an agent or assistant agent of the company, who was charged in part with the duty of the protection due plaintiff from the company as its passenger."
We quote also from an opinion by Walker, J., speaking for the Court inLanier v. Pullman Co., 180 N.C. 406, 105 S.E. 21, as follows: "Passengers do not contract merely for accommodation and transportation from one point to another; in the contract includes assurance of good treatment and against personal rudeness and every wanton interference with their persons, either by the carrier or his agents employed in the management of the railroad train or other conveyance. In respect to such treatment of passengers, not merely officers, but the crew, are agents of the carriers. It is among the implied provisions of the contract between passengers and a railroad company that the latter has employed suitable servants to run its train, who will accord proper treatment to them; and a violation of this implied duty or contract is actionable in favor of the passenger injured by its breach, although the act of the servant was willful and malicious, as in the case of a malicious assault upon a passenger, committed by any of the train hands, whether within the line of his employment or not. The duty of the carrier towards a passenger is contractual, and, among other implied obligations, is that of protecting a passenger from insults or assaults by other passengers or by their own servants."
To the same effect is the holding in White v. R. R., 115 N.C. 631,20 S.E. 191, and Williams v. R. R., 144 N.C. 498, 57 S.E. 216. See, also, Seawell v. R. R., 132 N.C. 856, 44 S.E. 610.
In Hutchinson v. R. R., 140 N.C. 123, 52 S.E. 263, it was said: "The authorities are plenary that the passenger is entitled to recover punitive damages for insult or mistreatment on the part of any employee of the common carrier." In Williams v. Gill, 122 N.C. 967, 29 S.E. 879, it was said: "Indeed, where the relation of carrier and passenger exists, the conduct of the employee of the carrier in inflicting violence on the passenger, though the act be outside of the scope of his authority or even wilful and malicious, subjects the carrier to liability in damages just as fully as if the carrier had encouraged the commission of the act."
In 10 Am. Jur., 263, referring to the liability of common carriers for assaults on passengers by employees, it is said: "This liability extends not only to cases where the assault was in the line of the employee's duty, but also to those where the act was merely that of an individual and entirely disconnected with the performance of the agent's duties." *Page 648 
And in 13 C. J. S., 1280, on the same point, discussing the liability of carriers for assaults on passengers committed by its employees, it is said: ". . . the carrier is liable, irrespective, according to some cases (citing, among other cases, Clark v. Bland, supra), of whether the servant, in performing the act complained of, was acting for the carrier or for his own purposes, . . . or was within the scope of his employment."
Unquestionably the general rule, established by the decisions of courts in this and other jurisdictions, is that the liability of corporations for damages, both compensatory and punitive, for injuries due to wrongful acts of servants, ordinarily, may only be imposed when the relationship of master and servant is shown to exist at the time and in respect to the very transaction out of which the injury arose. Liverman v. Cline, 212 N.C. 43,192 S.E. 849; Snow v. DeButts, 212 N.C. 120, 193 S.E. 224; Smithv. Duke University, 219 N.C. 628, 12 S.E.2d 643.
But, as pointed out in the cases cited, a distinction is to be noted in the application of this rule to cases where it appears that a duty directly owing from the master to the injured person grows out of the relationship of carrier and passenger. Since the carrier owes a high duty to a passenger to protect him from assault from any source, a malicious or wanton assault committed on a passenger by an employee while on duty, whether within the line of his employment or not, constitutes a breach of duty directly imposing liability. It may be noted that in Snow v. DeButts, supra, the plaintiff, who was alleged to have been assaulted by an agent of the railroad company, was not a passenger.
In accord with the principle stated in the authorities from which we have quoted, the submission of the issue as to punitive damages may not be held for error. Hence, evidence of the financial condition of the defendant was competent. Bryant v. Reedy, 214 N.C. 748, 200 S.E. 896; Roth v.News Co., supra.
While there must be a new trial for the error pointed out in the court's instructions to the jury, we have deemed it proper to decide other pertinent questions presented by the appeal.
New trial.